UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

SALIM STOKES

                              Plaintiff,

           -against-

THE CITY OF NEW YORK, a municipal corporation;
POLICE OFFICER MICHAEL HEWITT (Shield No. 20518),
in his individual and official capacity, POLICE OFFICER
MICHAEL IZZO (Shield No. 4225), in his individual and
official capacity, POLICE OFFICER CHRISTOPHER PADIN
(Shield No. 29578), in his individual and official capacity,
and POLICE OFFICERS JOHN DOE #1-3, in their individual
and official capacities.

                              Defendants.
-----------------------------------------------------------------------X

**COMPLAINT**

Docket No.

JURY TRIAL DEMANDED

      Plaintiff, Salim Stokes, by his attorneys, Moore Zeman Womble, LLP, alleges for his complaint against the defendants as follows:

## PRELIMINARY STATEMENT

1.    Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. §§ 1981, 1983 and 1988 for violations of his civil rights guaranteed by the Constitutions of the Unites States and the State of New York.

## JURISDICTION

2.    This action is brought pursuant to 42 U.S.C. §§ 1981, 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

3.    Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, 1367.

## VENUE

4. Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b)(2), in that this is the District in which the events or omissions underlying the claim arose.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. The plaintiff SALIM STOKES is an African-American male and was at all relevant times a citizen of the City and State of New York.

7. Defendant, the City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant, the City of New York, maintains the New York City Police Department (hereinafter referred to as "NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

9. At all times hereinafter mentioned, the individually named defendants, Police Officer Michael Hewitt (Shield No. 20518), Police Officer Michael Izzo (Shield No. 4225), and Police Officer Christopher Padin (Shield No. 29578), were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10. At all times hereinafter mentioned, the defendants, either personally or through

their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11.     Each and all of the acts of the defendant alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

12.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## FACTS

### March 28, 2013

13.     On March 28, 2013, at approximately 10:00 p.m., the defendant, NYPD police officer Michael I. Hewitt (Shield #20518), entered the lobby of 486 Columbia Street in Brooklyn, New York.

14.     At this same time, Plaintiff Salim Stokes was exiting this same building after visiting his aunt in Apartment 3A.

15.     The defendant, Police Officer Michael Hewitt, approached plaintiff Salim Stokes and asked him for his identification.

16.     Upon production of Mr. Stokes' identification, defendant Police Officer Michael Hewitt informed Mr. Stokes that he was under arrest.

17.     The defendant NYPD officer Michael Hewitt then rear handcuffed plaintiff SALIM STOKES, injuring plaintiff SALIM STOKES.  Plaintiff SALIM STOKES, requested that defendant NYPD officer Hewitt remove his handcuffs to avoid further injury.  Defendant NYPD officers did not remove plaintiff SALIM STOKES' handcuffs.

18.     Plaintiff SALIM STOKES was then transported by defendant NYPD officer Hewitt to an NYPD precinct and imprisoned therein.

19. On or about March 29, 2013, plaintiff SALIM STOKES was charged with Penal Law §§ 140.10 (criminal trespass in the third degree); 140.05 (trespass); and 140.15 (criminal trespass in the second degree).

20. After approximately twenty-four (24) hours in custody, Plaintiff SALIM STOKES was released from custody.

21. Subsequently, all charges against plaintiff were adjourned in contemplation of dismissal.

22. As a result, the plaintiff's criminal case was dismissed and sealed.

**January 14, 2015**

23. On January 14, 2015, at approximately 10:40 p.m., the defendant NYPD officer MICHAEL IZZO (Shield #4225), and Police Officer John Doe were outside of 420 Columbia Street in Brooklyn, New York.

24. At this same time, Plaintiff Salim Stokes was passing by 420 Columbia Street, approximately 300 feet from the main entrance, on his way to a bodega near the corner of Hicks and Mill Street.

25. The defendants, Police Officer Michael Izzo and Police Officer John Doe, approached plaintiff Salim Stokes and asked him for his identification.

26. Defendant Police Officer Michael Izzo told Plaintiff Salim Stokes that he was "messing with [him] because [they] saw [him] leaving 420 [Columbia Street]."

27. Mr. Stokes denied having either entered or having exited from 420 Columbia Street.

28. In addition, Mr. Stokes produced a letter dated October 30, 2013, and signed by a J. Martinez, indicating that Mr. Stokes was legally permitted to be on New York City Housing

4

Authority ("NYCHA") property.

29. Upon production of this letter and Mr. Stokes' identification, defendant Police Officer Michael Izzo, informed Mr. Stokes that he was under arrest.

30. The defendant NYPD officer Michael Izzo then rear handcuffed plaintiff SALIM STOKES, injuring plaintiff SALIM STOKES. Plaintiff SALIM STOKES, requested that defendant NYPD officer Izzo remove his handcuffs to avoid further injury. Defendant NYPD officers did not remove plaintiff SALIM STOKES' handcuffs.

31. Plaintiff SALIM STOKES was then transported by defendant NYPD officer Izzo to an NYPD precinct and imprisoned therein.

32. On or about January 15, 2015, plaintiff SALIM STOKES was charged with Penal Law §§ 140.10(E) (criminal trespass in the third degree); 140.05 (trespass); and 140.15(1) (criminal trespass in the second degree).

33. After approximately twenty-four (24) hours, Plaintiff SALIM STOKES was released from custody.

34. Subsequently, all charges against plaintiff were adjourned in contemplation of dismissal.

35. As a result, the plaintiff's criminal case was dismissed and sealed.

**May 19-20, 2015**

36. On May 19, 2015, at approximately 10:10 p.m., the defendant NYPD officer CHRISTOPHER PADIN (Shield #29578) was in the proximity of 465 Columbia Street in Brooklyn, New York.

37. At this same time, Plaintiff Salim Stokes was alleged by defendant to have entered the lobby of 465 Columbia Street.

38. The defendants, Police Officer Christopher Padin and Police Officer John Doe did nothing at this time.

39. On May 20, 2015, at approximately 12:12 a.m., according to Police Officer Chirstopher Padin and Police Officer John Doe, Mr. Salim Stokes was alleged to have been seen leaving 450 Columbia Street in Brooklyn, New York.

40. At this time both defendant Police Officer Christopher Padin and Police Officer John Doe approached plaintiff Salim Stokes, who was with another individual, calling out to Mr. Stokes by his name.

41. Upon approaching Mr. Stokes, Police Officer Christopher Padin patted down Mr. Stokes and searched his pockets.

42. Mr. Stokes asked why he was being stopped and searched and neither defendant Police Officer Christopher Padin nor defendant Police Officer John Doe responded.

43. The person Mr. Stokes was with was neither questioned nor searched by either defendant officers.

44. Mr. Stokes then produced the same letter dated October 30, 2013, and signed by a J. Martinez, indicating that Mr. Stokes was legally permitted to be on New York City Housing Authority ("NYCHA") property.

45. Upon production of this letter and Mr. Stokes' identification, Police Officers Christopher Padin and John Doe informed Mr. Stokes that he was under arrest.

46. The defendant NYPD officer Christopher Padin then rear handcuffed plaintiff SALIM STOKES, causing pain to plaintiff SALIM STOKES.

47. Plaintiff SALIM STOKES was then transported by defendant NYPD officer Padin and John Doe to an NYPD precinct and imprisoned therein.

6

48. On or about May 20, 2015, plaintiff SALIM STOKES was charged with two (2) counts of Penal Law § 140.10(E) (criminal trespass in the third degree); two (2) counts of Penal Law §140.05 (trespass); and Penal Law § 221.05 (unlawful possession of marijuana).

49. After approximately twenty-four (24) hours, Plaintiff SALIM STOKES was released from custody.

50. Subsequently, all charges against plaintiff were adjourned in contemplation of dismissal.

51. As a result, the plaintiff's criminal case was dismissed and sealed on November 10, 2015.

52. All of the above occurred while other defendant NYPD officers failed to intervene in the illegal conduct described herein.

53. All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, arresting individuals for mere presence at a location; the inadequate screening, hiring, retaining, training supervising, and disciplining of its employees; and due to discrimination against plaintiff due to his race and/or nationality.

54. The aforesaid event is not an isolated incident. Defendant CITY OF NEW YORK is aware (from lawsuits, notices of claims, and complaints filed with the NYPD's Internal Affairs Bureau, and the CITY OF NEW YORK'S Civilian Complaint Review Board) that many NYPD officers, including defendants, are insufficiently trained regarding the execution of search warrants; the investigation of crimes; and, the treatment of innocent and/or uninvolved individuals present at the location of the execution of a search warrant.

55. Defendant CITY OF NEW YORK is further aware that such improper training has

7

often resulted in a deprivation of civil rights. Despite such notice, defendant CITY OF NEW YORK has failed to take corrective action. This failure caused the officers in the present case to violate the plaintiffs' civil rights.

56. Moreover, upon information and belief, defendant CITY OF NEW YORK was aware, prior to the incident, that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers. Despite such notice, defendant CITY OF NEW YORK has retained these officers, and failed to adequately train and supervise them.

57. As a result of the foregoing, plaintiff SALIM STOKES sustained, *inter alia*, physical injuries, emotional distress, embarrassment, humiliation, and deprivation of their constitutional rights.

**FEDERAL CLAIMS**

**FIRST CAUSE OF ACTION**
(Deprivation of Rights Under 42 U.S.C. §§ 1981 and 1983)

58. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "57" with the same force and effect as if fully set forth herein.

59. All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

60. All of the aforementioned acts deprived plaintiff SALIM STOKES, a member of a racial minority, of the rights, privileges and immunities guaranteed to the citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §§ 1981 and 1983.

61. The acts complained of were carried out by the aforementioned individual

defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto, and with the intent to discriminate on the basis of race.

62. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

63. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

64. Defendants violated the Fourth and Fourteenth Amendment because they stopped and detained plaintiff without reasonable suspicion.

65. As a result, plaintiff SALIM STOKES sustained the damages alleged herein.

## SECOND CAUSE OF ACTION
(Unlawful Stop Under 42 U.S.C. § 1983)

66. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "65" with the same force and effect as if fully set forth herein.

67. All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

68. Defendants stopped plaintiff SALIM STOKES without reasonable suspicion.

69. As a result, plaintiff SALIM STOKES sustained the damages alleged herein.

## THIRD CAUSE OF ACTION
(False Arrest/Unlawful Imprisonment Under 42 U.S.C. § 1983)

70. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "69" with the same force and effect as if fully set forth herein.

71. All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

72. As a result of defendants' aforementioned conduct, plaintiff SALIM STOKES was subjected to an illegal, improper, and false arrest by the defendants. On all three occasions, plaintiff was taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings. In the above-mentioned actions, defendants acted intentionally, willfully, with malice, and without probable cause, privilege or consent.

73. Plaintiff SALIM STOKES was conscious of his confinement.

74. As a result of the foregoing, plaintiff SALIM STOKES' liberty were restricted for an extended period of time, plaintiff was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

## FOURTH CAUSE OF ACTION
(Failure To Intervene Under U.S.C. § 1983)

75. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "74" with the same force and effect as if fully set forth herein.

76. All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

77. Defendants had an affirmative duty to intervene on behalf of plaintiff SALIM STOKES, whose constitutional rights were being violated in their presence by other officers.

78. The defendants failed to intervene to prevent the unlawful conduct described herein.

79. As a result of the foregoing, plaintiff SALIM STOKES' liberty was restricted for an extended period of time, he was put in fear of his safety, and he was humiliated and subjected

to physical restraints.

## FIFTH CAUSE OF ACTION
(Excessive Force Under U.S.C. § 1983)

80. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "79" with the same force and effect as if fully set forth herein.

81. All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

82. While in the course of their duties and while acting under color of law, defendants affected a seizure of plaintiff SALIM STOKES by intentionally using excessive physical force against plaintiff, including but not limited to placing him in restraints, causing injury, including but not limited to, pain to his arms, hands, and wrists.

83. The physical force of the individual officer defendants on plaintiff SALIM STOKES was objectively unreasonable.

84. By virtue of the foregoing, defendants used excessive force on plaintiff SALIM STOKES causing him physical injury.

## SIXTH CAUSE OF ACTION
(Violation of the Equal Protection Clause under 42 U.S.C. § 1983)

85. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "84" with the same force and effect as if fully set forth herein.

86. The defendants falsely arrested and unlawfully imprisoned plaintiff SALIM STOKES because of his national origin, and/or race, or otherwise failed to intervene to prevent such treatment committed in their presence by other NYPD officers.

87. By virtue of the foregoing, plaintiff SALIM STOKES was deprived of his rights under the Equal Protection Clause of the United States Constitution.

## SEVENTH CAUSE OF ACTION
(Supervisory Liability under 42 U.S.C. § 1983)

88. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "87" with the same force and effect as if fully set forth herein.

89. The supervisory defendants personally caused plaintiff SALIM STOKES constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinates.

## EIGHTH CAUSE OF ACTION
(Municipal Liability)

90. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "89" with the same force and effect as if fully set forth herein.

91. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipal/authority, which is forbidden by the Constitution of the United States.

92. The aforementioned customs, policies, usages, practices, procedures and rules of the New York City Police Department included, but were not limited to, arresting individuals for mere presence at a location. In addition, the CITY OF NEW YORK engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training, disciplining and supervising its employees that was the moving force behind the violation of plaintiff SALIM STOKES' rights as described herein. As a result of the failure of the CITY OF NEW YORK to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, defendant CITY OF NEW YORK has tacitly authorized, ratified, and has been deliberately indifferent to the acts and conduct complained of herein.

93. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeated misconduct by the same officers, same units, and same precincts. In the fiscal year of 2012, there were 2,004 tort cases commenced against the New York City Police Department, up from 1,425 tort cases commenced for the fiscal year of 2008.[1] In the past ten years, the City of New York has paid nearly a billion dollars from lawsuits brought against the NYPD.[2]

94. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

95. However, the City of New York has isolated NYPD officers like Police Officer Michael Hewitt (Shield No. 20518), Police Officer Micahel Izzo (Shield No. 4225), Police Officer Christopher Padin (Shield No. 29578), and Police Officers John Doe #1-3, from accountability for

---

[1] Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on January 24, 2014.

[2] "NYPD gives quite the payday; AP report reveals police have dolled out $1B to resolve lawsuits," by Associated Press Writers Colleen Long and Jennifer Peltz via Daily News wire Report, http://www.nydailynews.com/new-york/nypd-payday-ap-report-reveals-police-dolled-1b-resolve-lawsuits-article-1.189671, October 15, 2010 last visited on January 27, 2014.

13

civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.[3] This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

96. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

97. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the

---

[3] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/, last visited on January 27, 2014.

same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and false arrest suffered by plaintiff.

98. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

99. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

100. In Floyd v. City of New York, 08-cv-01034-SAS-HBP, Judge Scheindlin found that the City acted with "deliberate indifference toward the NYPD's practice of making unconstitutional stops and conducting unconstitutional frisks" and adopted "a policy of indirect

15

racial profiling by targeting racially defined groups for stops based on local crime suspect data." (Opinion and Order, dated August 12, 2013, P.13).

101. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

102. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

103. As a result of the foregoing, plaintiff SALIM STOKES is entitled to compensatory damages in an amount to be determined by a jury and are further entitled to punitive damages against the individual defendants in an amount to be determined by a jury.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

    a. Compensatory damages in an amount to be determined by a jury;

    b. Punitive damages in an amount to be determined by a jury;

    c. Costs, interest and attorney's fees, pursuant to 42 U.S.C. §1988; and

    d. Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated:  Brooklyn, New York
        January 25, 2016                   By:    Benjamin Zeman

                                                                                                             Benjamin Zeman
                                        Attorney for Plaintiff
                                        Moore Zeman Womble, LLP
                                        66 Willoughby St., 2nd Floor
                                        Brooklyn, New York 11201
                                        (T) (718) 514-9100
                                        (F) (917) 210-3700
                                        zeman@brooklynattorney.nyc